IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RON FLEMMING, #R63277,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-00263-JPG |
| | ) |
| **DR. ELS, and** | ) |
| **JOHN DOE,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Ron Flemming is currently incarcerated at the Hill Correctional Center in Galesburg, Illinois, but was previously incarcerated at Pinckneyville Correctional Center in Pinckneyville, Illinois. (Doc. 8 at 3.) Proceeding *pro se*, Flemming has filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging that he was denied treatment for his chronic eye issues by Dr. Els, a physician at Pinckneyville. (*Id.* at 2-3.) Flemming also claims that a pharmacy technician at the prison, who he has dubbed as a John Doe for purposes of this suit, refused to provide him with his prescription eye medications. (*Id.* at 3.) Flemming seeks $100,000 in compensatory damages and $50,000 in punitive damages. (*Id.* at 5.)

This matter is now before the Court for a preliminary review of Flemming's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if

the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

According to Flemming's amended complaint, Flemming was transferred to Pinckneyville in June 2011. (Doc. 8 at 2.) At that time, he suffered from several chronic eye issues, including glaucoma, entropion lashes in his left eye, and a prosthesis in his right eye. (*Id.*) Prior to his transfer, Flemming had received long-term treatment for his eye issues, and he was not experiencing any blurry vision or other complications at that time. (*Id.*)

In July 2011, Flemming saw Dr. Els for the first time. (*Id.*) Dr. Els told Flemming that his retina was damaged and that the pressure in his left eye should be kept low. (*Id.*) Flemming saw Dr. Els again in August 2011, and the pressure in his eye was fine. (*Id.*) Beginning in early 2012, however, the pressure in Flemming's eye worsened – it rose to 29 in January 2012, and to 30 in August 2012. (*Id.*) Despite the change in pressure, Flemming claims that Dr. Els "did nothing about [the] pressure increase" and did not provide treatment. (*Id.*)

In early 2013, Flemming again saw Dr. Els, as he was suffering from blurred vision and headaches. (*Id.*) This time, Dr. Els did not check Flemming's eye pressure, and still did not provide him with any treatment. (*Id.*) From August 2013 to April 2014, Flemming continued to have issues with his vision, but his requests to see Dr. Els for follow up were ignored. (*Id.* at 2-3.) He filed a grievance concerning his requests to see Dr. Els, and was able to see him again on April 9, 2014. (*Id.* at 3.) During that visit, Dr. Els measured Flemming's eye pressure at 32. (*Id.*) Flemming told Dr. Els that his vision was so bad that he was "walking into objects and couldn't see the person talking to [him]," and that previous specialists directed him to keep his

pressure at 18 or lower. (*Id*.) Dr. Els said there "wasn't anything wrong with [Flemming's] eyesight," and allowed his various eye conditions to "go untreated." (*Id*.)

Flemming also claims that he requested his prescription eye drops from a pharmacy worker at Pinckneyville on numerous occasions from August 2013 to March 2014. (*Id*.) Flemming claims that the pharmacy worker failed to provide him with his prescription eye drops despite his requests, and that this failure contributed to his eye deterioration. (*Id*.)

In May 2014, Flemming was transferred to Hill Correctional Center, where he saw Dr. Carter for his eye related issues. (*Id*. at 3-4.) Dr. Carter conducted a visual field test and discovered that Flemming lost the vision in the lower part of his left eye. (*Id*. at 4.) He was treated with different eye glasses and prescription eye drops, and was referred to a glaucoma specialist. (*Id*.) That specialist, in turn, told Flemming that he "suffered from glaucoma neglect" and that he needed surgery immediately. (*Id*.) Flemming last saw an eye doctor in December 2014, and he claims that his sight "is still blurry" due to his issues at Pinckneyville. (*Id*.)

Flemming filed his initial § 1983 complaint concerning the events at Pinckneyville on March 9, 2015, naming the warden of Pinckneyville, a member of the Illinois Administrative Review Board, and several medical staff at the prison. (Doc. 1) Flemming's 39-page, single-spaced complaint was filled to the brim with conclusory allegations but lacking in factual detail concerning his eye issues and the role the named defendants played in those issues, so it was dismissed with leave to re-plead on March 30, 2015. (Doc. 5) On April 30, 2015, Flemming filed his amended complaint, trimming his defendants down to Dr. Els and the pharmacy worker, and alleging that they were indifferent to his medical requests. (Doc. 8.)

**Discussion**

Flemming's complaint focuses primarily on Dr. Els' failure to treat, so the Court will begin with that claim (**Count 1**). The Eighth Amendment of the United States Constitution bars cruel and unusual punishment of prisoners, and prison officials violate this proscription "when they display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). To bring an Eighth Amendment claim against a physician, a prisoner has two hurdles to surmount: he must first show that his medical condition is "objectively" serious, and he must then allege that the medical professional acted with the requisite state of mind. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).

For screening purposes, Flemming has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Flemming's glaucoma and other chronic eye conditions arguably qualify as serious, which is enough for preliminary screening purposes. *See O'Banner v. Bizzell*, 151 F.3d 1033 (7th Cir. 1998) (holding that glaucoma is "manifestly a sufficiently serious condition").

Flemming's complaint also alleges that Dr. Els acted with the necessary state of mind, at least for purposes of screening review. To be sure, "medical malpractice, negligence, or even gross negligence" by a physician "does not equate to deliberate indifference." *Johnson v.*

*Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006).  Rather, deliberate indifference can be inferred if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."  *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).  Such a departure might occur when a professional knows of a serious condition yet fails to provide any treatment.  *See*, *e.g.*, *Watkins v. Lancor*, 558 F. App'x 662, 666 (7th Cir. 2014) (prisoner had a "plausible case" when he alleged failure "to address pain" caused by a broken bone); *Montanez v. Feinerman*, 439 F. App'x 545, 549 (7th Cir. 2011) (prisoner stated claim by alleging that medical professionals knew of kidney stones "but have not provided any treatment").  Deliberate indifference might also exist when a health care provider knows of a need for follow-up care and delays providing it.  *See*, *e.g.*, *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010) (error to dismiss when personnel knew of need for follow-up yet forced prisoner to "wait three months" for care).  Here, Flemming alleges both a delay in follow-up care and a failure to treat, and this is enough to put forth an arguable claim.  As such, **Count 1** will proceed past preliminary review.

Concerning Flemming's claim that the John Doe pharmacy technician repeatedly failed to provide him with his prescription eye drops (**Count 2**), this claim also passes screening review.  A health care worker's failure to provide prescription medication over a prisoner's requests can constitute deliberate indifference.  *See*, *e.g.*, *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (allegation that nurse failed to give prisoner "his prescribed pain medication" could establish a constitutional claim); *Ralston v. McGovern*, 167 F.3d 1160, 1162

(7th Cir. 1999) (prison guard's "deliberate refusal" to provide pain medicine prescribed by prison physician put forth an Eighth Amendment claim).  In this case, Flemming alleges that he repeatedly asked the John Doe pharmacy worker to give him his prescription eye drops, and he was not provided with those drops.  These allegations put forth an arguable claim of deliberate indifference in failing to provide medications, so **Count 2** may proceed.

One closing note concerning the John Doe pharmacy worker:  this worker must be identified with particularity before service of the complaint can occur on him.  Where a prisoner's complaint states specific allegations describing the conduct of unknown prison employees sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  In this case, guidelines for discovery aimed at identifying the John Doe pharmacy worker will be set by the magistrate judge, so that Plaintiff can identify that individual.  It appears that Dr. Els may know the identity of this individual, so there is no need to add the warden of Pinckneyville to assist in identification, at least at this time.  If Dr. Els is unable to identify the pharmacy worker, then Plaintiff may request that Pinckneyville's warden be added as a defendant to this case, in his official capacity only and for the sole purpose of assisting with identification.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall proceed against Defendant **ELS**, and **COUNT 2** shall proceed against Defendant **JOHN DOE**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendant **ELS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy

of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the federal rules.

**IT IS FURTHER ORDERED** that, if the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered) a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Appointment of Counsel (Doc. 3) is **REFERRED** to the United States Magistrate Judge for consideration.

Further, this entire matter is hereby **REFERRED** to the United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 7, 2015**

*s/J. Phil Gilbert*
**United States District Judge**
